**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P:(410) 962-4953 — F:(410) 962-2985

January 14, 2026

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE:     _Kevin S. v. Frank Bisignano, Social Security Administration_[1]
      Civil No. 8:25-cv-01268-JMC

Dear Counsel:

      Although Kevin Speight ("Plaintiff") was eventually awarded disability insurance benefits ("DIB") by the Social Security Administration ("SSA" or "Defendant"), Plaintiff nonetheless petitioned this Court on April 21, 2025, to review the SSA's decision to begin those benefits as of November of 2024 rather than the earlier disability onset date of September 2018 urged by Plaintiff.   (ECF No. 1).  The Court has considered the record in this case as well as the parties' dispositive filings.  (ECF Nos. 11, 13, 14).  No hearing is necessary.  _See_ Loc. R. 105.6 (D. Md. 2025).  The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard.  _See_ 42 U.S.C. §§ 405(g), 1383(c)(3); _Mastro v. Apfel_, 270 F.3d 171, 176 (4th Cir. 2001); _Craig v. Chater_, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, I will remand ALJ's and Appeals Council's determinations for the reasons explained below.

## I.     Procedural Background

      Plaintiff filed his Title II application for DIB and SSI on August 23, 2019, alleging disability as of September 20, 2018.  (Tr. 1022).[2] The SSA initially denied both applications on August 29, 2019.  _Id._ On April 15, 2020, Plaintiff filed for reconsideration.  _Id._ at 145-46. Defendant affirmed its initially determination on July 9, 2021.  _Id._ at 147-52.  Thereafter, on July 28, 2021, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  _Id._ at 153-

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 8) filed in this case.  When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

58. A hearing took place via telephone on February 4, 2022, before ALJ Andrew Emerson. *Id.* at 1005-1022. On March 2, 2022, ALJ Emerson denied Plaintiff's claims. *Id.* at 12-30. Plaintiff appealed, and the decision became final when the Appeals Council affirmed it on September 22, 2022. *Id.* at 1-6.

Plaintiff filed Civil Action No. 8:22-cv-02659, in which this Court remanded the case for further proceedings. *Id.* at 1086. Then, on December 14, 2024, ALJ Emerson held a remand hearing. *Id.* at 1008. On February 18, 2025, ALJ Emerson concluded that Plaintiff was disabled as of November 22, 2024, and was therefore not disabled prior to that date as Plaintiff had argued. *Id.*

## II.    The ALJ's Decision

In arriving at the decision to deny Plaintiff's claim seeking an earlier disability onset date, the ALJ (and subsequently the Appeals Council) followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ and Appeals Council found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability September 20, 2018. (Tr. 1012). However, the ALJ later concluded that Plaintiff did not become disabled until November 22, 2024. *Id.* at 1021. At step two, the ALJ and Appeals Council determined that Plaintiff suffered from the following severe impairments: "degenerative disc disease of the cervical and lumbar spine, status-post right Lisfranc fracture dislocation, fracture of proximal phalanx of the right great toe, osteoarthritis of the feet, interstitial lung disease, diabetes mellitus, chronic kidney disease, bilateral retinopathy/epiretinal membrane/vitreous hemorrhage/macular edema, tractional bilateral retinal detachment/bilateral nuclear sclerosis/left retinal detachment repair with vitrectomy, major depressive disorder/(mood) affective disorder, and anxiety disorder (20 CFR 404.1520(c) and 416.920(c))." *Id.* at 1012.

At step three, the ALJ and Appeals Council determined that Plaintiff's impairments or combination of impairments do not meet or equal one of the listed impairments in the regulations.

*Id.*; 20 CFR §§ 404(p), Appendix I (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.925, 416.926). In assessing Plaintiff's step-three impairments, the ALJ reasoned in part:

> Before the established onset date, the severity of the claimant's mental impairments, considered singly and in combination, does not meet or medically equal the criteria of listing(s) 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.

(Tr. 1013). Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

> [T]he undersigned finds that prior to November 22, 2024, the date the claimant became disabled, the claimant had the residual functional to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally operate foot controls with the right foot and can frequently operate foot controls with the left foot. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, and scaffolds. He can occasionally rotate, flex, and extend his neck. He can occasionally reach overhead bilaterally. He is limited to jobs that can be performed while using a cane for ambulation. He must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, excessive vibration, pulmonary irritants such as fumes, odors, dust, gases, and poorly ventilated areas, hazardous moving machinery, and unprotected heights. The claimant is limited to occupations requiring only frequent near acuity and far acuity. He is limited to simple, routine, repetitive, low-stress (no strict production quotas, no assembly line pace work) work involving occasional interaction with supervisors, co-workers, and the general public. He can tolerate occasional changes in in a routine work setting. By using the term "no strict production quotas", it means no assembly line pace work but the individual is able to perform work activities at a normal and consistent pace for the typical eight-hour workday; 40 hours a week work schedule within customary employer tolerances for off task behavior and absence from work each month. He would be off-task no more than 15% of the workday and absent from work no more than one day of work each month..

*Id.* at 1015. To that end, the ALJ reasoned,

> Turning to the claimant's mental impairments, the claimant has some normal

mental status examinations as well as some abnormal mental status examinations containing fairly scattered positive clinical signs (Ex. B6F/2, B9F, B12F). Positive clinical signs are typically characterized as "fair," consistent with moderate mental limits (Ex. B9F, B4F). For instance, in July 2022 the claimant presented with increased depression, with multiple medical issues including his untreatable skin condition impacting his overall health. The claimant appeared sad and hopeless, had poor insight and poor attention span at the time (Ex. B19F/150). Providers prescribed Mirtazapine (Ex. 19F/149). The claimant's mood and emotional health improved with medication (Ex. B9F/181/179/144). The claimant's treating psychiatrist found that the claimant was experiencing moderate depression, with the claimant generally reporting he felt well and providers observed the claimant had stable mood (Ex. B9F/179, 195). Thus, moderate mental limits found, including limitations to simple, routine, repetitive tasks, occasional social interactions with supervisors, coworkers, and the public, and only occasional changes to the routine work setting. Further, given the claimant's moderate concentration, persistence, and pace deficits, including noted poor concentration at times, the claimant would be off task during a workday, but no more than 15%.

*Id.* at 1017.  However, the ALJ also concluded that:

> After careful consideration of the entire record, the undersigned finds that prior to November 22, 2024, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally operate foot controls with the right foot and can frequently operate foot controls with the left foot. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, and scaffolds. He can occasionally rotate, flex, and extend his neck. He can occasionally reach overhead bilaterally. He is limited to jobs that can be performed while using a cane for ambulation. He must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, excessive vibration, pulmonary irritants such as fumes, odors, dust, gases, and poorly ventilated areas, hazardous moving machinery, and unprotected heights. The claimant is limited to occupations requiring only frequent near acuity and far acuity. He is limited to simple, routine, repetitive, low-stress (no strict production quotas, no assembly line pace work) work involving occasional interaction with supervisors, co-workers, and the general public. He can tolerate occasional changes in in a routine work setting. By using the term "no strict production quotas", it means no assembly line pace work but the individual is able to perform work activities at a normal and consistent pace for the typical eight-hour workday; 40 hours a week work schedule within customary employer tolerances for offtask behavior and absence from work each month. He would be off-task no more than 15% of the workday and absent from work no more than one day of work each month.

*Id.* at 1018-19.  Prior to the established date of disability onset on November 22, 2024, the ALJ concluded that Plaintiff did not have past relevant work.  *Id.* at 1020.

4

Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ determined that prior to November 22, 2024, Plaintiff could perform the following jobs which existed in significant numbers in the national economy: (1) Inspector, Hand Packager, with a Dictionary of Occupational Titles code of 559.687-074, with approximately 256,000 such positions in the national economy; (2) Non-Postal Mail Clerk, with a Dictionary of Occupational Titles code of 209.687-026, with approximately 20,000 such positions in the national economy; (3) Garment Sorter, with a Dictionary of Occupational Titles code of 222.687-014, with approximately 135,000 such positions in the national economy. *Id.* at 1020-21. Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, prior to November 22, 2024. *Id.* at 1021.

### III.    Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation and internal quotations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

### IV.    Analysis

Plaintiff argues on appeal that the ALJ's decision was not supported by substantial evidence. Specifically, Plaintiff faults the ALJ's and Appeals Council's RFC determination for the disputed period of disability on several grounds: (1) that the ALJ's RFC determination is unsupported by substantial evidence because it lacks a logical explanation; and (2) that the ALJ's absenteeism finding was inconsistent with the vocational expert's testimony (ECF No. 11). For the reasons that follow, the ALJ's and Appeals Council's RFC determination is supported by substantial evidence. As such, I will remand the case.

#### a.    The ALJ's and Appeals Council's RFC Determination is Supported by Substantial Evidence

"An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a 'regular and continuing basis.'" *Rodney M. v. Kijakazi*, No. CV 23-0947-CDA, 2024 WL 1097192, at *3 (D. Md. Mar. 13, 2024) (quoting 20 C.F.R. § 416.945(b)–(c)). The ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work" in determining a claimant's RFC. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "An ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical

functions listed in 20 C.F.R. § 404.1545(b), including sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work." *Rodney M.*, 2024 WL 1097192, at *3 (internal citation omitted). As previously explained by the Fourth Circuit, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311). Thus, "A proper RFC analysis proceeds in the following order: (1) evidence, logical explanation, and conclusion." *Id.* at 388 (cleaned up). The Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," though, and has explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636; *see also Monroe*, 826 F.3d at 188. A "necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion.") (internal quotation omitted) (emphasis in original).

>    *i.      The ALJ and Appeals Council Improperly Determined Plaintiff's RFC*

A claimant's RFC represents "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). Plaintiff correctly points out that in determining a claimant's RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [his] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). An RFC analysis requires (1) evidence, (2) a logical explanation, and (3) a conclusion. *Id.* Plaintiff is entitled to a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts…and nonmedical evidence" *Id.* A "logical bridge" connecting the evidence and conclusion is "shorthand" for "the most minimal of articulation requirements." *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024). Even when an ALJ does not assess exertional capabilities on an explicit function-by-function basis, there is no per se rule requiring remand when an ALJ does not perform such an analysis. *Mascio*, 780 F.3d at 636. Indeed, "the driving consideration is whether the ALJ's analysis allows for meaningful judicial review," *Lail v. Kijakazi*, No. 21-2133, 2022 WL 1711809, at *1 (4th Cir. May 27, 2022). "Thus . . . remand is appropriate only where 'inadequacies in the ALJ's analysis frustrate meaningful review,' such as when an ALJ fails to assess a claimant's capacity to perform relevant functions or does not resolve material disputes in the record." *Delesline-Meggett v. Comm'r of Soc. Sec.*, No. 21-1859, 2023 WL 8230802, at *1 (4th Cir. Nov. 28, 2023).

To that end, Plaintiff argues that the ALJ's RFC determination for the disputed period is "devoid of any explanation as to how [he] calculated that specific RFC limitation, which is a material error that precludes judicial review." (ECF No. 11 at 10). Specifically, Plaintiff points to the ALJ's conclusion that Plaintiff "would be off-task no more than 15% of the workday." *Id.*

(citing Tr. 1015). In support of Plaintiff's position, he relies on several of this Court's previous decisions to remand decisions predicated on improper RFC determinations. *See id.* In *Lee v. Berryhill*, this Court remanded a case for further proceedings when the ALJ concluded a plaintiff could function at "90 percent of the efficiency of an unimpaired worker due to her symptoms, including her ability to maintain focused attention," while also recognizing that the plaintiff had "moderate difficulties in maintaining concentration, persistence, or pace." *Lee v. Berryhill*, Civil No. TMD 15-3307, 2017 WL 3007068, at *8 (D. Md. Jul. 14, 2017). In support of her RFC determination, the ALJ relied on several medical opinions that characterized the plaintiff's capabilities to varying degrees of severity.[3] *Id.* Ultimately, this Court concluded that the ALJ "failed to explain how this evidence translated into a determination that [the plaintiff] would be off task 10% of the time." *Id.* The Court there cited to *Lobbes v. Colvin*, in support of the proposition that failure to explain why the facts equated to a 10% reduction "as opposed to the 20% reduction [the ALJ] contemplated (or, for that matter, any other number)." *Id.* (citing *Lobbes v. Colvin*, No. 4:13-cv-RLY-WGH, 2014 WL 1607617, at *20 (S.D. Ind. Apr. 22, 2014)). Thus, the Court reversed the decision and remanded the case for further proceedings. *Id.*

Having carefully reviewed the record, the Court is persuaded that the ALJ's narrative warrants remand. As Plaintiff points out, the RBC indicates Plaintiff "would be off-task no more than 15% of the workday," but does not elaborate upon how that percentage was calculated. (Tr. 1015). Like in *Lee*, the ALJ failed to explain how the evidence—evidence he concluded shows multiple moderate limitations—translates into a determination that Plaintiff would be off-task 15% of the time as opposed to any other percentage of time. *Id.*; *see also Lee*, 2017 WL 3007068, at *8. Indeed, Plaintiff correctly avers "[a]n explanation of how the percentage of time off-task was calculated is significant, since a relatively small increase could preclude competitive employment." *Fisher v. Comm'r, Soc. Sec.*, No. RDB-17-3165, 2018 WL 3348858, at *3 (D. Md. July 9, 2018); see also *Overman v. Berryhill*, Civil No. TJS-17-2446 (D. Md. Sept. 11, 2018).

The Commissioner's arguments to the contrary are unpersuasive. The Commissioner broadly asserts that Plaintiff does not point to any evidentiary conflicts on the record. (ECF No. 13 at 8-9). But Plaintiff correctly retorts that a claimant does not bear the obligation to provide a proper narrative explanation. (ECF No. 14 at 2). In the Court's view, the lack of clear reasoning is precisely the problem. While it is true that Plaintiff does not point to a specific medical conclusion that provides for a different percentage of off-task time, he need not do so, and the reasoning should be clear enough such that the Court does not have to guess at the ALJ's reasoning. *Lee.*, 2017 WL 3007068, at *8; *Bibey v. Saul*, No. 1:19-cv-02690-JMC, 2020 WL 7694552, at *4 (D. Md. Dec. 23, 2020). Therefore, the ALJ's RFC determination lacks a logical bridge and warrants

---

[3]     The ALJ noted that treating sources found Plaintiff to demonstrate good/fair/intact attention, a logical thought process, appropriate thought content, good memory, no psychomotor agitation or retardation, good abstract thought, a cooperative attitude, articulate speech, normal behavior, no psychosis, and no hallucinations or delusions upon examination. R. at 22, 25. The ALJ also cited the opinions of the state agency psychological consultants, who opined that Plaintiff had "moderate limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation." R. at 26 (citing R. at 251-54, 305-08). Dr. Edmunds also opined, however, that Plaintiff "would be expected to perform adequately with structured routine tasks[ ] that require minimal independent decision making, based on history of poor judgment" and could perform "simple tasks on a prolonged basis."

*Lee.*, 2017 WL 3007068, at *8.

remand on that basis.

## V.    Conclusion

In sum, the Court agrees with Plaintiff that the ALJ and subsequently the Appeals Council inadequately explained Plaintiff's RFC determination for the disputed period. In other words, the ALJ's and Appeals Council's RFC determination for Plaintiff is not supported by substantial evidence for the reasons explained above. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED and REMANDED. The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge